**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

MOLINA HEALTHCARE, INC.,
200 Oceangate, Suite 100
Long Beach, CA 90802

MOLINA HEALTHCARE OF KENTUCKY, INC.
5100 Commerce Crossings Drive
Louisville, KY 40229

MOLINA HEALTHCARE OF CALIFORNIA
200 Oceangate, Suite 100
Long Beach, CA 90802

MOLINA HEALTHCARE OF ILLINOIS, INC.
2001 Butterfield Rd., Suite 750
Downers Grove, IL 60515

SENIOR WHOLE HEALTH, LLC
1075 Main Street, Suite 400
Waltham, MA 02451

MOLINA HEALTHCARE OF UTAH, INC.
7050 Union Park Center, Suite 600
Midvale, UT 84047

MOLINA HEALTHCARE OF WASHINGTON, INC.
22522 29th Drive SE, Suite 210
Bothell, WA 98021

MOLINA HEALTHCARE OF MICHIGAN, INC.
1201 Woodward Avenue, Suite 900
Detroit, MI 48226

SENIOR WHOLE HEALTH OF NEW YORK, INC.
15 MetroTech Center, 11th Floor
Brooklyn, NY 11201

MOLINA HEALTHCARE OF TEXAS, INC.
2200 Highway 121, Suite 270A
Bedford, TX 76021

Civil Action No. 1:26-cv-4023

MOLINA HEALTHCARE OF SOUTH CAROLINA, INC.
115 Fairchild Street, Suite 340
Charleston, SC 29492

MOLINA HEALTHCARE OF ARIZONA, INC.
5055 E. Washington Street
Suite 210, Phoenix, AZ 85034

MOLINA HEALTHCARE OF OHIO, INC.
3000 Corporate Exchange Drive
Columbus, OH 43231

MOLINA HEALTHCARE OF IOWA, INC.
500 SW 7th Street, Suite 304
Des Moines, IA 50309

MOLINA HEALTHCARE OF NEBRASKA, INC.
14748 W. Center Road, Suite 104
Omaha, NE 68144

MOLINA HEALTHCARE OF NEW MEXICO, INC.
101 D. Sun Ave NE Suite 3E
Albuquerque, NM 87106

Plaintiffs,

v.

DEPARTMENT OF HEALTH AND HUMAN SERVICES
Hubert H. Humphrey Building
200 Independence Avenue, S.W.
Washington, D.C. 20201

CENTERS FOR MEDICARE & MEDICAID SERVICES
7500 Security Boulevard
Baltimore, MD 21244

Defendants.

## COMPLAINT

Plaintiffs Molina Healthcare, Inc. ("Molina Healthcare") and its subsidiaries, Molina Healthcare of Kentucky, Inc., Molina Healthcare of California, Molina Healthcare of Illinois, Inc., Senior Whole Health, LLC, Molina Healthcare of Utah, Inc., Molina Healthcare of Washington, Inc., Molina Healthcare of Michigan, Inc., Senior Whole Health of New York, Inc., Molina Healthcare of Texas, Inc., Molina Healthcare of South Carolina, Inc., Molina Healthcare of Arizona, Inc., Molina Healthcare of Ohio, Inc., Molina Healthcare of Iowa, Inc., Molina Healthcare of Nebraska, Inc., and Molina Healthcare of New Mexico, Inc. (together, "Molina"), by and through their undersigned counsel, bring this Complaint seeking relief against Defendants the United States Department of Health and Human Services ("HHS") and the Centers for Medicare & Medicaid Services ("CMS") (together, "Defendants"). In support thereof, Molina alleges as follows:

## INTRODUCTION

1. Star ratings are key to the operation of the Medicare Advantage ("MA") program. They direct the amount of financial contributions a Medicare Advantage Organization ("MAO") receives from the federal government, which impacts the benefits, premiums, and quality programs that MAOs can offer to their members. In establishing the Star ratings program and recognizing the impact of Star ratings on MAOs, Congress created specific statutory protections to ensure that Star ratings are drawn only from specific data sources. Further, the Medicare Act requires that CMS implement rules on payment, among other matters, through notice-and-comment rulemaking.

2. Molina brings this action pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, seeking to vacate CMS's 2027 Star ratings for the contracts identified in

Exhibit A to this Complaint. Those ratings were calculated by relying on 14 measures that were unlawfully adopted and should be removed from consideration.

3. Every year, CMS uses its Star ratings program to evaluate the performance of MA contracts, assigning each a rating on a scale of 1 to 5 Stars—a measure designed to express the quality of coverage through each contract to current and potential beneficiaries. *See* 42 C.F.R. §§ 422.162(b), 422.166(h), 423.182(b), 423.186(h). CMS assesses each MA contract against a standardized group of "measures," applying a uniform methodology that encompasses quality, compliance, and related performance indicators to determine each contract's Star rating. The resulting ratings accomplish two things: (1) they communicate to beneficiaries the quality of a contract; and (2) they determine payments to MAOs—through rebate retentions and Quality Bonus Payments ("QBPs")—that CMS disburses during the year immediately following the rating year (*i.e.*, payments trail the ratings by one year).

4. On October 8, 2026, CMS released the 2027 Star ratings for MAOs. Molina's Star ratings for the contracts identified in Exhibit A included 14 measures that were not promulgated via notice-and-comment rulemaking. Ten of these measures were also based on data sources not authorized by statute. CMS relies upon Star ratings measures that have been unlawfully adopted and thus should be set aside under 5 U.S.C. § 706(2)(A), (C), and (D).

5. Molina's claims do not require this Court to break new legal ground. The U.S. District Court for the Southern District of Georgia addressed and accepted the exact legal theories Molina brings here when it decided *Clover Insurance Co. v. U.S. Department of Health & Human Services*, No. 2:25-cv-00142, 2026 WL 1483515 (S.D. Ga. May 27, 2026). The *Clover* court concluded that CMS's reliance on 20 measures in computing the plaintiff's 2026 Star ratings was unlawful on two grounds: (1) ten of those challenged measures exceeded CMS's statutory

authority under 42 U.S.C. § 1395w-23(o)(4)(A) because they incorporated data from sources not allowed by 42 U.S.C. § 1395w-22(e), and, separately, (2) the other ten were implemented without the public notice-and-comment rulemaking mandated by 42 U.S.C. § 1395hh(a)(2). Based on this ruling, the court invalidated the 2026 Star rating for the contract at issue and instructed CMS to recalculate the rating in line with the court's order. CMS complied with respect to Clover.

6. But CMS went one step further. CMS—on its own—chose to calculate Clover's *2027* Star rating by omitting the equivalent measures that were invalidated by the Southern District of Georgia. CMS's action implicitly acknowledges the legal defects the *Clover* court identified because the *Clover* judgment was limited to Clover's *2026* Star rating. *No other* MAO received this same treatment.

7. Additionally, for the Star ratings of other MAOs in 2026, as announced in a June 17, 2026, memorandum, CMS voluntarily excluded 18 measures—some of which overlapped with the measures at issue in *Clover* but some of which did not—from the Star rating calculations. CMS stated in its memorandum that it was recalculating the 2027 QBP ratings for MAOs by only using data collected under 42 U.S.C. § 1395w-22(e) as of November 1, 2003. By voluntarily removing all the Part D measures and six additional Part C measures (even though not all of these measures were challenged in the *Clover* lawsuit), CMS recognized that they were not lawful.

8. Despite the *Clover* ruling and its choice to exclude measures in 2026, CMS reverted to using all unlawful measures to calculate the 2027 Star ratings (except for Clover's 2027 Star rating). In doing so, CMS included measures afflicted by the identical legal deficiencies identified in *Clover*. Specific to Molina, CMS's inclusion of 14 unlawful measures created substantial harm to the company's Star ratings.

9. By filing this action, Molina seeks to vacate the 2027 Star ratings received for contracts H1799, H3038, H3093, H4367, H4371, H5628, H5823, H5926, H5992, H6515, H6585, H7318, H7678, H8176, H8845, and H9955 on the basis that CMS incorporated 14 improper measures that exceed CMS's statutory authority, were adopted without notice-and-comment rulemaking, or both. If CMS calculated the 2027 Star ratings without those 14 unlawful measures, Molina would realize—across the contracts at issue here—approximately a $140 million increase in 2028 QBP and rebate retention funding. These additional funds would allow Molina to further improve the benefits it offers to its members, lower premiums, and finance quality improvement initiatives such as expanded care coordination. Further, because CMS publishes individual-contract Star ratings on its Medicare Plan Finder tool, by incorporating these unlawful measures into Molina's 2027 Star ratings calculation, CMS disseminated a less favorable rating for Molina compared to the ratings of Molina's competitor MAOs that benefit from the unlawful measures. The Plan Finder is available on CMS's website and makes MAO-specific information accessible to Medicare beneficiaries, brokers, and the general public. That public, less favorable rating damages Molina's ability to compete for Medicare beneficiaries to enroll in its MA plan.

10. By incorporating measures that violate the requirements of 42 U.S.C. § 1395w-23(o)(4)(A) and 42 U.S.C. § 1395hh(a)(2) into the calculation of Molina's 2027 Star ratings, CMS has substantially injured Molina. Therefore, Molina respectfully requests that this Court order CMS to recalculate Molina's 2027 Star ratings without the 14 unlawful measures challenged here.

## **JURISDICTION, VENUE, AND EXHAUSTION**

11. This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331 because this action arises under the APA, 5 U.S.C. § 701 *et seq.*, and raises questions under the Medicare statute, 42 U.S.C. § 1395 *et seq*.

12. Venue is proper in this Court under 28 U.S.C. § 1391(e) because this is an action against United States agencies.

13. On October 8, 2026, CMS published the 2027 Star ratings for Molina's contracts, including those identified in Exhibit A. That publication constitutes a final agency action.

14. No administrative process exists through which Molina may seek reconsideration of CMS's action challenged in this Complaint.

15. Molina has standing because the Star ratings for Molina's contracts identified in Exhibit A were calculated using 14 measures that exceeded CMS's statutory authority. CMS's Star rating calculation and publication constitute final agency action that has directly injured Molina by causing significant economic harm of approximately $140 million in rebates and QBPs and a loss of reputation that places Molina at a competitive disadvantage in the MA marketplace relative to other MAOs, including Clover.

16. The relief Molina seeks is an order directing CMS to set aside Molina's 2027 Star ratings and recalculate them without the 14 unlawful measures. That relief would redress the injury CMS caused and finally resolve this dispute.

## **PARTIES**

17. Molina Healthcare, Inc. is a Delaware corporation with its principal place of business located in Long Beach, CA.

18. Molina Healthcare, a leading national health insurer, offers health benefit products through its affiliates and subsidiaries. Molina Healthcare, through its subsidiaries, furnishes coverage to Medicare beneficiaries under Parts C and D, including through the following contracts listed in subparagraphs (a) through (p):

a. Contract H1799, entered into with CMS by Molina Healthcare of Kentucky, Inc., a subsidiary of Molina Healthcare. Contract H1799 received a 2027 Star rating of 3.5 Stars.

b. Contract H3038, entered into with CMS by Molina Healthcare of California, a subsidiary of Molina Healthcare. Contract H3038 received a 2027 Star rating of 3 Stars.

c. Contract H3093, entered into with CMS by Molina Healthcare of Illinois, Inc., a subsidiary of Molina Healthcare. Contract H3093 is considered a "new" contract for Star rating purposes and, therefore, is entitled to receive the enterprise weighted average of all of Molina Healthcare's contracts.

d. Contract H4367, entered into with CMS by Molina Healthcare of Iowa, Inc., a subsidiary of Molina Healthcare. Contract H4367 is considered a "new" contract for Star rating purposes and, therefore, is entitled to receive the enterprise weighted average of all of Molina Healthcare's contracts.

e. Contract H4371, entered into with CMS by Senior Whole Health, LLC, a subsidiary of Molina Healthcare. Contract H4371 is considered a "new" contract for Star rating purposes and, therefore, is entitled to receive the enterprise weighted average of all of Molina Healthcare's contracts.

f. Contract H5628, entered into with CMS by Molina Healthcare of Utah, Inc., a subsidiary of Molina Healthcare. Contract H5628 received a 2027 Star rating of 3 Stars.

g. Contract H5823, entered into with CMS by Molina Healthcare of Washington, Inc., a subsidiary of Molina Healthcare. Contract H5823 received a 2027 Star rating of 3 Stars.

h. Contract H5926, entered into with CMS by Molina Healthcare of Michigan, Inc., a subsidiary of Molina Healthcare. Contract H5926 received a 2027 Star rating of 3.5 Stars.

i. Contract H5992, entered into with CMS by Senior Whole Health of New York, Inc., a subsidiary of Molina Healthcare. Contract H5992 received a 2027 Part D Summary Star rating of 3 Stars and no Overall Star rating.

j. Contract H6515, entered into with CMS by Molina Healthcare of Texas, Inc., a subsidiary of Molina Healthcare. Contract H6515 is considered a "new" contract for Star rating purposes and, therefore, is entitled to receive the enterprise weighted average of all of Molina Healthcare's contracts.

k. Contract H6585, entered into with CMS by Molina Healthcare of Nebraska, Inc., a subsidiary of Molina Healthcare. Contract H6585 is considered a "new" contract for Star rating purposes and, therefore, is entitled to receive the enterprise weighted average of all of Molina Healthcare's contracts.

l. Contract H7318, entered into with CMS by Molina Healthcare of New Mexico, Inc., a subsidiary of Molina Healthcare. Contract H7318 is considered a "new" contract for Star rating purposes and, therefore, is

entitled to receive the enterprise weighted average of all of Molina Healthcare's contracts.

m. Contract H7678, entered into with CMS by Molina Healthcare of Texas, Inc., a subsidiary of Molina Healthcare. Contract H7678 received a 2027 Star rating of 3 Stars.

n. Contract H8176, entered into with CMS by Molina Healthcare of South Carolina, Inc., a subsidiary of Molina Healthcare. Contract H8176 received a 2027 Star rating of 2.5 Stars.

o. Contract H8845, entered into with CMS by Molina Healthcare of Arizona, Inc., a subsidiary of Molina Healthcare. Contract H8845 received a 2027 Part D Summary Star rating of 2.5 Stars and no Overall Star rating.

p. Contract H9955, entered into with CMS by Molina Healthcare of Ohio, Inc., a subsidiary of Molina Healthcare. Contract H9955 received a 2027 Star rating of 3 Stars.

19. Defendant HHS is a department of the Executive Branch of the United States government responsible for overseeing the Medicare program. Its headquarters are located at 200 Independence Ave., S.W., Washington, D.C. 20201. HHS has delegated authority over the administration of the Medicare program to CMS. *See* 66 Fed. Reg. 35437-03 (July 5, 2001).

20. CMS is the component agency within HHS that bears primary responsibility for administering and overseeing the Medicare program. *See id.* Its headquarters are located at 7500 Security Blvd., Baltimore, MD 21244.

## FACTUAL ALLEGATIONS

### I. Medicare Advantage

21. Medicare is a federal health insurance program created to provide coverage for Americans aged 65 and older, along with qualifying individuals with disabilities. *See* 42 U.S.C. § 1395 *et seq.*

22. Medicare comprises four parts, each addressing distinct aspects of healthcare for its beneficiaries. Part A covers inpatient hospital stays, skilled nursing facilities, hospice care, and home health care. Part B covers outpatient care, physician visits, preventive services, home health care, and durable medical equipment. *See* 42 U.S.C. §§ 1395c through 1395i-6 (Part A); 42 U.S.C. §§ 1395j through 1395w-6 (Part B). Under Parts A and B—collectively known as "traditional" or "original" Medicare—the federal government acts as the insurer and directly reimburses providers for services provided to enrolled beneficiaries.

23. Alternatively, a beneficiary may choose to enroll in Medicare Part C, known since 2003 as Medicare Advantage, instead of traditional Medicare. Congress created Medicare Part C through the Balanced Budget Act of 1997. *See* 42 U.S.C. § 1395w-21 *et seq.* Under the MA program, CMS enters into contracts with private health insurers to deliver Medicare-covered benefits to enrolled beneficiaries, transferring the financial risk of benefit delivery from the federal government to privately operated MAOs, which receive a fixed monthly payment for each enrolled member. *See* 42 U.S.C. § 1395w-23. That per-member, per-month payment must be at least equal to traditional Medicare spending per enrollee.

24. MAOs must provide their members with benefits no less comprehensive than those available under traditional Medicare. MAOs combine coverage from Parts A and B and commonly also offer prescription drug coverage under Part D, which was enacted in 2003 and took effect in

2006 as part of the Medicare Prescription Drug, Improvement, and Modernization Act of 2003 ("MMA"), Pub. L. No. 108-173, 117 Stat. 2066 (2003). *See* 42 U.S.C. § 1395 *et seq.*

25. Among other programmatic changes, the MMA created an annual bidding process. *See id.* § 1395w-23(a)(1)(B). Each year, MAOs submit a bid by the first Monday in June estimating the cost of providing core Medicare benefits for the upcoming plan year, inclusive of overhead and profit. *See id.* When the bid is lower than CMS's county-level benchmark, CMS returns a portion of the savings to the MAO as a "rebate"—funds the MAO may allocate toward supplemental benefits, premium reductions, or both. *See id.* § 1395w-23(a)(1)(E).

## II. <u>Star Ratings and Their Impact on MAOs</u>

### A. Medicare Star Rating Calculations

26. CMS first published annual performance ratings for stand-alone Medicare Prescription Drug Plans in 2007. The following year, CMS "introduced and displayed the Star Ratings for Medicare Advantage Organizations . . . for both Part C only contracts . . . and Part C and D contracts (MA-PDs). Each year since 2008, [CMS has] released the MA Star Ratings [subsequently adding] [a]n overall rating combining health and drug plan measures" in 2012. 83 Fed. Reg. 16440, 16520 (April 16, 2018) (Final Rule).

27. Each contract is given an overall Star rating on a scale of 1 to 5 Stars, including half-star increments, calculated by assessing the contract's performance across the measures designated by CMS. Individual measures carry varying weights (as assigned by CMS) and are combined to produce the contract's Star rating. Because the overall rating represents a weighted average, performance on any individual measure—especially a heavily weighted one—can move a contract above or below the critical 3.5 Star threshold, which, in turn, affects the MAO's QBP.

28. A decade before the Star ratings program was launched, MAOs were required to maintain "an ongoing quality assurance program" for the healthcare services provided to their

members. Pub. L. No. 105-33, § 4001, 111 Stat. 251, 291 (1997) (codified at 42 U.S.C. § 1395w-22(e)(1)). Congress expressly granted CMS the authority to select the "quality and outcomes measures" that the Secretary "determine[d] to be appropriate" as elements of plans' quality assurance programs. 42 U.S.C. § 1395w-22(e)(1), (e)(2)(A)(xii) (1997). That broad discretion produced uncertainty and confusion, as CMS proposed various quality measures and practice standards with little constraint.

29. In 2003, Congress resolved this uncertainty by codifying CMS's quality measures into statute. *See* MMA, Pub. L. No. 108-173, § 109, 117 Stat. 2066 (2003). These amendments limited CMS to requiring quality-measure data that were "the types of data that were collected by the Secretary as of November 1, 2003," allowing departure from those data types only after submission of a report to Congress. 42 U.S.C. § 1395w-22(e)(3)(B).

30. In 2004, CMS acknowledged that it was constrained under § 1395w-22(e) and that it would thereafter rely solely on its pre-existing, pre-2003 measurement systems addressing clinical quality, health outcomes, and beneficiary satisfaction: the Healthcare Effectiveness Data and Information Set ("HEDIS"), Health Outcomes Survey ("HOS"), and Consumer Assessment of Healthcare Providers and Systems ("CAHPS").

31. CMS stated, "we interpret section 1852(e)(3)(B)(i) of the Act to mean that we can continue to require MA coordinated care plans to collect, analyze, and report their performance by using the measurement systems that are currently required, such as HEDIS, HOS, and CAHPS, as appropriate for the type of plan." *See* 69 Fed. Reg. 46,866, 46,886 (Aug. 3, 2004).

32. CAHPS surveys "probe those aspects of care for which consumers and patients are the best or only source of information, as well as those that consumers and patients have identified as being important." 42 C.F.R. § 422.162. HEDIS is the Healthcare Effectiveness Data and

Information Set, which includes clinical measures assessing the effectiveness of care, access/availability measures, and service-use measures. HOS refers to the Medicare Health Outcomes Survey, which is a patient-reported outcomes measurement. *Id.*

33. CMS launched its Star ratings system in 2007. In 2010, the Patient Protection and Affordable Care Act ("ACA"), Pub. L. No. 111-148, 124 Stat. 119 (2010), established the Quality Bonus Payment program and adopted the Star ratings system as its implementing mechanism. Congress designated § 1395w-22(e) as the exclusive source of data for quality rating calculations, omitting the clause that had previously given the Secretary discretion to consider other measures. *See* 42 U.S.C. § 1395w-23(o)(4)(A) ("The quality rating for a plan shall be determined according to a 5-Star rating system (based on the data collected under section 1395w–22(e) of this title)").

34. CMS publishes its Star rating methodology in annual sub-regulatory guidance documents known as "Technical Notes," which specify the applicable measures and other key data used to assign measure-level scores and overall Star ratings. *See generally* CMS, Medicare 2027 Part C & D Star Ratings Technical Notes (Sept. 30, 2026), https://www.cms.gov/files/document/2027-tech-notes-2026-09-30.pdf. It is impossible to calculate MAO Star ratings without relying upon the measure specifications contained in CMS's Technical Notes.

35. Although CMS's Technical Notes play a critical role and establish a substantive legal standard for determining payment for services and the scope of benefits, CMS develops the Technical Notes, and the measures they describe, outside notice-and-comment rulemaking, contrary to 42 U.S.C. § 1395hh(a)(2).

36. 42 U.S.C. § 1395hh(a)(2) dictates that any "rule, requirement, or other statement of policy" that "establishes or changes a substantive legal standard governing the scope of benefits,

the payment for services, or the eligibility of individuals, entities, or organizations to furnish or receive services or benefits" under Medicare must not take effect without promulgation by notice and comment.

37. The Supreme Court has held that the Medicare statute imposes a more stringent notice-and-comment requirement than the APA. *See Azar v. Allina Health Servs.*, 587 U.S. 566, 579 (2019) (affirming the lower court's order vacating a Medicare reimbursement policy that was adopted without notice and comment as required by § 1395hh(a)(2)). CMS's regulations were also amended in 2018 to require CMS to propose and finalize new measures and substantive updates to existing measures through rulemaking. *See* 83 Fed. Reg. 16,440, 16,537 (Apr. 16, 2018) (Final Rule); 42 C.F.R. §§ 422.164(c)(2), 422.164(d)(2), 423.184(c)(2), 423.184(d)(2). However, apart from new measures and substantive updates, CMS has maintained its longstanding position that it has no obligation to develop its measure specifications, including Technical Notes, through notice-and-comment rulemaking. *See, e.g.*, CMS's Advance Notice of Methodological Changes for Calendar Year (CY) 2015 for Medicare Advantage (MA) Capitation Rates, Part C and Part D Payment Policies and 2015 Call Letter.

38. As outlined in CMS's Technical Notes, Star ratings measures and measure specifications govern MAOs' Star ratings and are the deciding factor for: (1) whether an MAO is eligible for a QBP, thereby increasing the benchmark against which MAOs bid; (2) the amount of monthly payments from CMS an MAO will receive; and (3) the amount an MAO may retain in the form of a rebate if the MAO's bid amount is lower than the benchmark. *See* 42 U.S.C. § 1395w-23(b)(1)(B), (E). The ratings also impact the ability of MAOs to offer higher reimbursement rates, increase their network of providers, expand the scope of benefits to members, and reduce member cost. *See* 42 U.S.C. § 1395w-24(b)(1)(C); 42 C.F.R. §§ 422.266, 422.2410. Finally, the ratings

determine MAOs' eligibility to offer MA plans because CMS may terminate MAOs that earn Part C Star ratings below three (3) Stars for three (3) consecutive years. *See* 42 C.F.R. § 422.510(a)(4)(xi).

**B. Rebate Retentions and the Quality Bonus Payment**

39. Consistent with 42 U.S.C. § 1395w-23(o), CMS pays a QBP to MAOs whose contracts achieve a Star rating of 4 or above. The QBP is an elevated benchmark—the maximum per-member amount CMS will pay—resulting in the MAO being able to provide supplemental benefits, offer additional programs designed to improve health outcomes, and return excess payments to enrollees as rebates, among other things.

40. Each June, MAOs submit bids to CMS for the following year (*e.g.*, bids for MA contract year 2028 are due to CMS in June 2027). MAOs whose bids fall below a specified benchmark receive a "rebate" from CMS, which they may use to further improve benefits, reduce cost-sharing, or lower premiums.

41. The proportion of the rebate an MAO retains is directly tied to its Star rating.

42. Contracts rated below 3.5 Stars (including unrated or new plans) retain 50% of the rebate amount, whereas contracts that achieve a rating of at least 3.5 but below 4.5 Stars retain 65%. Contracts reaching the highest tier of 4.5 Stars or above retain the maximum 70% of the rebate, thereby providing higher-quality contracts with greater financial flexibility.

43. This tiered framework means that a contract's Star rating carries significant downstream implications not only for its QBPs but also for its ability to fund more generous benefit designs and sustain competitiveness in the marketplace.

44. For an MAO like Molina, the difference between reaching the 3.5-Star threshold and falling just short can translate into millions of dollars in forgone annual rebates and bonus payments.

### C. The Medicare Advantage Cycle

45. Star ratings are released in October of each year in advance of an annual bidding and award cycle, which determines payments and services for the following year.

46. The 2027 Star ratings for Molina's contracts (and all other MAO contracts) were made public on October 8, 2026. Those 2027 Star ratings determine Molina's rebate retentions and QBP for MA contract year 2028.

47. The bids for the 2028 contracts are due to CMS in June 2027.

48. The following sets forth the key events in the Medicare 2027 Star ratings cycle:

| **2027 Star Ratings – Key Periods and Events** | |
|---|---|
| Calendar Year 2025 | Measurement period for the performance data that serve as a baseline for 2027 Star ratings. |
| June 1, 2026 | Statutory bid deadline for 2027, factoring in anticipated 2027 rebate retentions and QBP based on 2026 Star ratings |
| Aug. 5, 2026 – Aug. 12, 2026 | Plan Preview 1 for 2027 Star ratings |
| Sept. 8, 2026 – Sept. 15, 2026 | Plan Preview 2 for 2027 Star ratings |
| Oct. 8, 2026 | 2027 Star ratings published |
| Oct. 15, 2026 | Annual Election Period commences |
| November 2026 | Final membership figures for Enterprise Star rating calculation |
| Jan. 1, 2027 | Medicare Advantage Open Enrollment commences |
| June 7, 2027 | Statutory bid deadline for 2028, factoring in anticipated 2028 rebate retentions and QBP based on 2027 Star ratings |
| 2028 | QBPs stemming from 2027 Star ratings paid |

### D. The *Clover* Decision and CMS's Response

49. On November 7, 2025, Clover Insurance Company filed suit in the U.S. District Court for the Southern District of Georgia, challenging its 2026 Star rating on the ground that CMS had unlawfully adopted 20 measures used in calculating that rating.

50. Clover requested removal of the 20 measures on several bases, including that CMS impermissibly relied upon data sources outside of § 1395w-22(e) to calculate its Star rating in violation of 42 U.S.C. § 1395w-23(o)(4)(A) and failed to promulgate measures through notice-and-comment rulemaking, as required by 42 U.S.C. § 1395hh(a)(2).

51. The court agreed. In its order entered on May 27, 2026, the court held that 20 measures on which CMS relied in calculating the 2026 Star ratings were unlawful.

52. As to CMS's failure to comply with 42 U.S.C. § 1395w-23(o)(4)(A), the court held that the statute limits CMS's authority to base its quality rating calculations on measures that use data collected under § 1395w-22(e), or CAHPS, HEDIS, or HOS. The court found that the plain language of the statute, as well as the "legislative history and general principles of agency power," supports this reading of the statute. *Clover,* 2026 WL 1483515, at *14. The court concluded that ten of the 20 measures challenged by Clover failed to comply with 42 U.S.C. § 1395w-23(o)(4)(A).

53. Specifically, the court stated that eight of the ten challenged measures did not rely on HEDIS, HOS, or CAHPS as primary sources of data. For two of the challenged measures, the court held that the primary data source for both measures is CAHPS; however, these measures use data collected under Part D (not Part C) authority at 42 U.S.C. § 1395w-104(d). Therefore, the court found that neither of those measures relies on data collected under 42 U.S.C. § 1395w-22(e). *Clover,* 2026 WL 1483515, at *9.

54. The court concluded that the ten remaining measures challenged by Clover were invalid because CMS failed to promulgate them through notice-and-comment rulemaking. Specifically, the court held that Star ratings measure specifications qualify as "statements of policy" that establish or change a substantive legal standard for purposes of § 1395hh(a)(2)

because they "define the scope of MAOs' legal rights to rebates" and "govern payment for services." *Clover,* 2026 WL 1483515, at *23.

55. The court vacated Clover's 2026 Star rating and directed CMS to recalculate it consistent with its holding.

56. The chart below identifies all the measures[1] held to be unlawful by the *Clover* court:

| | |
|---|---|
| **Category 1:** Measures Based on Non-§ 1395w-22(e) Data Sources | • **C32** (Reviewing Appeals Decisions);<br>• **C33** (Call Center – Foreign Language Interpreter and TTY Availability);<br>• **D01** (Call Center – Foreign Language Interpreter and TTY Availability);<br>• **D05** (Rating of a Drug Plan);<br>• **D06** (Getting Needed Prescription Drugs);<br>• **D08** (Medication Adherence for Diabetes Medications);<br>• **D09** (Medication Adherence for Hypertension (RAS antagonists));<br>• **D10** (Medication Adherence for Cholesterol (Statins));<br>• **D11** (MTM Program Completion Rate for CMR); and<br>• **D12** (Statin Use in Persons with Diabetes). |
| **Category 2:** Measures Established or Materially Changed Without Notice-and-Comment Rulemaking | • **C03** (Annual Flu Vaccine);<br>• **C04** (Improving or Maintaining Physical Health);<br>• **C05** (Improving or Maintaining Mental Health);<br>• **C15** (Reducing the Risk of Falling);<br>• **C16** (Improving Bladder Control);<br>• **C22** (Getting Needed Care);<br>• **C23** (Getting Appointments and Care Quickly);<br>• **C24** (Customer Service);<br>• **C25** (Rating of Health Care Quality); and<br>• **C27** (Care Coordination). |

57. CMS did not immediately appeal the *Clover* decision and seek a stay. Instead, within two weeks of the order, CMS recalculated Clover's 2026 Star rating as ordered by the court, thus complying with the court's order.[2]

---

1 The measure numbers correspond to the measures as numbered in 2026.

2 CMS took the court's order even further and excluded the same measures for Clover's 2027 Star rating. Nearly two months after the decision, on July 21, 2026, the Clover defendants filed a notice of appeal to the United States Court of Appeals for the Eleventh Circuit. *See Clover Ins.*

## III. Molina's 2027 Star Ratings

### A. Publication of 2027 Star Ratings in October 2026

58. On October 8, 2026, CMS published the 2027 Star ratings. With respect to Molina, CMS assigned overall 2027 Star ratings of 3.5 Stars to H1799, 3 Stars to H3038, 3 Stars to H5628, 3 Stars to H5823, 3.5 Stars to H5926, 3 Stars to H7678, 2.5 Stars to H8176, and 3 Stars to H9955; and Part D 2027 Star ratings of 3 Stars to H5992 and 2.5 Stars to H8845. Each of the Star ratings for these contracts would have been at least 0.5 Stars higher if the rating had not incorporated the unlawful measures challenged here.

59. Contracts H3093, H4371, H6515, H4367, H6585, and H7318 are "new" contracts for Star rating purposes and, therefore, are entitled to receive the enterprise weighted average of all of Molina Healthcare's contracts. Upon the recalculation of the contracts listed in Exhibit A, Molina Healthcare's enterprise weighted average will increase to 3.5 Stars, and these contracts are entitled to utilize that updated enterprise weighted average for purposes of their bid submissions and plan operations for CY 2028.

60. CMS—in calculating Molina's 2027 Star ratings—relied upon ten measures that were based on data that were not collected under 42 U.S.C. § 1395w-22(e), as required by 42 U.S.C. § 1395w-23(o)(4)(A). Moreover, all of the 14 measures challenged by this Complaint share the legal infirmity that none was adopted via notice-and-comment rulemaking as required by 42 U.S.C. § 1395hh(a)(2).

61. In contrast, for Clover's 2027 Star rating—and *only* Clover's—CMS removed the measures held unlawful in *Clover* despite no legal requirement to do so: the *Clover* court's order only addressed Clover's 2026 Star rating. It was impossible for the *Clover* court's order to reach

*Co. v. DHHS*, No. 2:25-cv-00142 (S.D. Ga.), Notice of Appeal, ECF No. 67 (July 21, 2026). That appeal is pending. *See Clover Ins. Co. v. DHHS*, No. 26-12553 (11th Cir.).

Clover's 2027 Star rating because CMS only announced those ratings on October 8, 2026—well after the court's order was published on May 27, 2026.

62. By voluntarily removing measures for Clover's 2027 Star rating, CMS has implicitly conceded that it implemented these measures in violation of the law—no other reason justifies their exclusion from Clover's 2027 Star rating.

63. Nothing has changed in the past year such that the approach to Star rating measures found unlawful in *Clover* might be considered lawful now, for purposes of calculating any MAO's 2027 Star ratings. Congress has also not expanded CMS's legal authority over the Star ratings program in the intervening period. Nevertheless, CMS calculated all 2027 Star ratings—except for Clover's—as though the *Clover* decision had never been issued and despite its own removal (and implicit concession of their improper nature) of many of these same measures for purposes of calculating 2026 Star ratings.

64. Molina's Star ratings were calculated by using measures that are unlawful for the same reasons advanced in *Clover* and as further illustrated by CMS's own June 2026 memorandum.

65. Specifically, the following 14 measures that CMS factored into Molina's Star ratings are invalid because they were not promulgated through notice-and-comment rulemaking:

| | **Measure Number for 2027 Star Ratings** |
|---|---|
| Measures Established or Materially Changed Without Notice-and-Comment Rulemaking | • **C01** (Breast Cancer Screening);<br>• **C10** (Osteoporosis Management in Women Who had a Fracture);<br>• **C18** (Statin Therapy for Patients with Cardiovascular Disease);<br>• **C20** (Follow-up after Emergency Department Visit for People with Multiple High-Risk Chronic Conditions);<br>• **C27** (Complaints about the Health Plan);<br>• **C28** (Members Choosing to Leave the Plan);<br>• **D02** (Complaints About Drug Plan);<br>• **D03** (Member Choosing to Leave Drug Plan);<br>• **D08** (Medication Adherence for Diabetes Medications);<br>• **D09** (Medication Adherence for Hypertension (RAS antagonists));<br>• **D10** (Medication Adherence for Cholesterol (Statins));<br>• **D11** (Statin Use in Persons with Diabetes (SUPD));<br>• **D12** (Concurrent Use of Opioids/Benzos);<br>• **D13** (Polypharmacy: Use of Multiple Anticholinergic Medications in Older Adults (Poly-ACH)).[3] |

66. As explained above, these measures establish a substantive legal standard insofar as they are the deciding principle for payments in the form of QBPs and rebates that Molina will receive from CMS, effectively determining the financial rights of the MAO. They are furthermore critical to Molina's ability to negotiate higher reimbursement rates for providers, expand provider networks and benefits, and reduce costs for members.

67. Ten of the 14 measures are also unlawful because they fail to comply with the requirement at 42 U.S.C. § 1395w-23(o)(4)(A) that data must be "collected under section 1395w-22(e)":

[3] D12 and D13 are new measures for 2027 Star ratings. *See* CMS, Medicare 2027 Part C & D Star Ratings Technical Notes (Sept. 30, 2026), https://www.cms.gov/files/document/2027-tech-notes-2026-09-30.pdf, at pg. 2.

| | **Measure Number for 2027 Star Ratings** |
|---|---|
| Measures Based on Non-§ 1395w-22(e) Data Sources | • **C27** (Complaints about the Health Plan);<br>• **C28** (Members Choosing to Leave the Plan);<br>• **D02** (Complaints about Drug Plan);<br>• **D03** (Member Choosing to Leave Drug Plan);<br>• **D08** (Medication Adherence for Diabetes Medications);<br>• **D09** (Medication Adherence for Hypertension (RAS antagonists));<br>• **D10** (Medication Adherence for Cholesterol (Statins));<br>• **D11** (Statin Use in Persons with Diabetes (SUPD));<br>• **D12** (Concurrent Use of Opioids/Benzos);<br>• **D13** (Polypharmacy: Use of Multiple Anticholinergic Medications in Older Adults (Poly-ACH)). |

68. The above measures are not based on HEDIS, HOS, and CAHPS data authorized under 42 U.S.C. § 1395w-22(e). Rather, C27 and D02 are based on Complaint Tracking Module (CTM) Data; C28 and D03 are based on Medicare Beneficiary Database Suite of Systems (MBDSS) data, and D08 through D13 are based on Prescription Drug Event (PDE) data, which CMS's own technical notes demonstrate are not HEDIS, HOS, and CAHPS data. *See* CMS, Medicare 2027 Part C & D Star Ratings Technical Notes (Sept. 30, 2026), https://www.cms.gov/files/document/2027-tech-notes-2026-09-30.pdf, at pgs. 152-53.

69. Moreover, CMS's publication of Molina's Star ratings, as distorted by the inclusion of 14 unlawful measures, has caused, and continues to cause, substantial reputational harm to Molina. Star ratings are publicly available on CMS's Medicare Plan Finder tool, where current and prospective Medicare beneficiaries consult them when making enrollment decisions and brokers and agents often emphasize Star ratings when selecting plans for potential enrollees. Further, because Star ratings are relative, competing MAO ratings are likely artificially elevated, further distorting how Molina's plan is perceived and casting it in a less favorable light.

70. The reputational implications of a lower Star rating extend beyond any single enrollment cycle. Brokers and third-party marketing organizations that help Medicare beneficiaries

choose MAO plans may rank lower-rated MAO plans below higher-rated MAO plans, diminishing Molina's visibility and competitiveness in the marketplace. Molina's requested remedy would redress the harm caused by CMS and result in final resolution of this dispute.

## CLAIMS FOR RELIEF

### COUNT I: AGENCY ACTION TAKEN WITHOUT OBSERVANCE OF PROCEDURE REQUIRED BY LAW (5 U.S.C. § 706(2)(D))

71. Molina incorporates by reference the allegations set forth in paragraphs 1 to 70 above as if fully restated herein.

72. Under 5 U.S.C. § 706(2)(D), an agency is prohibited from acting without observance of procedure required by law.

73. Congress has required that CMS conduct notice-and-comment rulemaking and codify "by regulation" any "rule, requirement, or other statement of policy" that "establishes or changes a substantive legal standard governing the scope of benefits, the payment for services, or the eligibility of individuals, entities, or organizations to furnish or receive services or benefits under [Medicare]." *Azar*, 587 U.S. at 570 (quoting 42 U.S.C. § 1395hh(a)(2)).

74. Furthermore, CMS's own regulations require it to adopt new quality measures through notice-and-comment rulemaking. *See* 42 C.F.R. § 422.164(c)(2) ("In advance of the measurement period, CMS will announce potential new measures and solicit feedback through the process described for changes in and adoption of payment and risk adjustment policies in section 1853(b) of the Act and then subsequently will propose and finalize new measures through rulemaking."); 42 C.F.R. § 423.184(c)(2) (Part D); *see also id.* § 422.164(d)(2) (requiring notice-and-comment rulemaking under Part C for substantive updates to existing measures), § 423.184(d)(2) (same requirement as applied to Part D).

75. CMS failed to undertake the required notice-and-comment rulemaking and codify "by regulation" the following measures applied to Molina in computing its 2027 Star ratings: C01, C10, C18, C20, C27, C28, D02, D03, D08, D09, D10, D11, D12, and D13. Each of these measures establishes a substantive legal standard governing payment for services, scope of benefits, and eligibility to furnish or receive services or benefits within the meaning of 42 U.S.C. § 1395hh(a)(2)—yet none was promulgated by regulation.

76. Because CMS derived the 2027 Star ratings for the contracts identified in Exhibit A using measures adopted without observance of procedure required by law (*i.e.*, notice and comment), the Court should set aside Molina's unlawful 2027 Star ratings and direct CMS to recalculate the ratings of the contracts identified in Exhibit A without regard to these measures.

**COUNT II:**
**AGENCY ACTION NOT IN ACCORDANCE WITH LAW,**
**IN VIOLATION OF STATUTORY RIGHT, IN EXCESS OF STATUTORY AUTHORITY**
**(5 U.S.C. § 706(2)(A), (C))**

77. Molina incorporates by reference the allegations set forth in paragraphs 1 to 70 above as if fully restated herein.

78. Congress limited the data on which CMS's Star ratings may be based to data for which an MAO provides for the collection, analysis, or reporting as part of its quality improvement program. 42 U.S.C. § 1395w-23(o)(4)(A) (requiring Star ratings to be based on "data collected under section 1395w-22(e) of this title").

79. CMS calculated the 2027 Star ratings for the contracts identified in Exhibit A using measures that are based on data not collected under § 1395w-22(e), including Medicare Beneficiary Database Suite of Systems, Complaints Tracking Module, and Prescription Drug Event data.

80. Ten of the measures challenged in this lawsuit (C27, C28, D02, D03, D08, D09, D10, D11, D12, and D13) were calculated using data generated outside the HEDIS, HOS, and CAHPS programs established under § 1395w-22(e), including Prescription Drug Event (PDE) data, Complaint Tracking Module (CTM) data, and Medicare Beneficiary Database Suite of Systems (MBDSS) data.

81. Because CMS calculated the 2027 Star ratings for the contracts identified in Exhibit A using measures that drew on data not collected under § 1395w-22(e), the Court should set aside the unlawful 2027 Star ratings and direct CMS to recalculate the ratings without regard to these measures.

## PRAYER FOR RELIEF

WHEREFORE, Molina respectfully requests that the Court enter judgment in its favor and grant the following relief:

a) Declare that CMS's inclusion of measures C01, C10, C18, C20, C27, C28, D02, D03, D08, D09, D10, D11, D12, and D13 in calculating the 2027 Star ratings for the contracts identified in Exhibit A was without observance of procedure required by law because CMS failed to adopt those measures through public notice and comment, as required by 42 U.S.C. § 1395hh(a)(2), 42 C.F.R. §§ 422.164, 423.184;

b) Declare that CMS's inclusion of measures C27, C28, D02, D03, D08, D09, D10, D11, D12, and D13 in calculating the 2027 Star ratings for the contracts identified in Exhibit A is unlawful for the additional reason that CMS exceeded its statutory authority because those measures were calculated with data not collected under 42 U.S.C. § 1395w-22(e), as required by 42 U.S.C. § 1395w-23(o)(4)(A);

c) Set aside the summary and/or overall 2027 Star rating of the contracts identified in Exhibit A and remand to CMS with instructions to recalculate the 2027 Star rating for each contract

at issue after excluding the 14 unlawful measures identified in this Complaint to arrive at the correct overall Star rating;

d) Order CMS to determine Molina's 2028 QBP and rebates in accordance with the recalculated Star ratings;

e) Order CMS to permit Molina to submit new, or to revise any bids already submitted, for CY2028 consistent with the recalculated Star ratings and the updated enterprise weighted average, to the extent necessary to effectuate the judgment; and

f) Award Molina such other and further relief as the Court may deem just and proper, including costs and fees, as permitted by law.

Dated: November 13, 2026

/s/ Daniel W. Wolff
Daniel W. Wolff
DWolff@crowell.com
D.C. Bar No. 486733
**Crowell & Moring LLP**
600 Fifth Street, N.W.
Washington, DC 20001
Telephone: (202) 624-2621

Steven D. Hamilton (*pro hac vice* forthcoming)
StevenHamilton@crowell.com
Illinois Bar No. 6289663
**Crowell & Moring LLP**
300 N. LaSalle Drive, Suite 2500
Chicago, IL 60654
Telephone: (312) 379-7615

*Counsel for Plaintiffs*

## Exhibit A

| Contract | Published 2027 Overall Star Rating or Part D Summary Rating | Anticipated Overall Star Rating or Part D Summary Rating Without 14 Unlawful Measures | Star Rating Increase |
|---|---|---|---|
| H1799 | 3.5 | 4 | 0.5 |
| H3038 | 3 | 3.5 | 0.5 |
| H3093 | Too new to be rated | 3.5<br>Enterprise weighted average | 0.5 |
| H4367 | Too new to be rated | 3.5<br>Enterprise weighted average | 0.5 |
| H4371 | Too new to be rated | 3.5<br>Enterprise weighted average | 0.5 |
| H5628 | 3 | 3.5 | 0.5 |
| H5823 | 3 | 3.5 | 0.5 |
| H5926 | 3.5 | 4 | 0.5 |
| H5992 | 3* | 4* | 1* |
| H6515 | Too new to be rated | 3.5<br>Enterprise weighted average | 0.5 |
| H6585 | Too new to be rated | 3.5<br>Enterprise weighted average | 0.5 |
| H7318 | Too new to be rated | 3.5<br>Enterprise weighted average | 0.5 |
| H7678 | 3 | 3.5 | 0.5 |
| H8176 | 2.5 | 3 | 0.5 |
| H8845 | 2.5* | 4* | 1.5* |
| H9955 | 3 | 3.5 | 0.5 |

An asterisk (*) indicates a Star rating applicable only to the contract's Part D rating.